UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **JAMIE LEE JONES** | **CIVIL ACTION NO. 22-5621** |
| | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **CADDO CORRECTIONAL CENTER MEDICAL DEPARTMENT, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Plaintiff Jamie Lee Jones, a prisoner at Caddo Correctional Center ("CCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately October 7, 2022, under 42 U.S.C. § 1983. He names the following Defendants: CCC Medical Department, Nurse Smith, Dr. David Nelson, and the Director of Medical.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

**Background**

Plaintiff, a pre-trial detainee, entered CCC on September 1, 2022. [doc. #s 1, p. 3; 5, p. 4]. During the booking process, he "complained about [his] serious medical condition." [doc. # 1, p. 3]. Later that day, he requested medical care because his condition worsened. *Id.*

Plaintiff states that the same day, "all Shreveport City water supply was placed on boil order." *Id.* at 6. He claims, "We were never notified of [the] boil order or given any water to drink." *Id.* "No notice was placed in [the dormitory] that a boil order was in effect" and that prisoners should not drink the water. *Id.* He alleges that drinking the water "contributed to

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

exposure to bacteria that caused infections in [his] tonsils and lymph nodes." [doc. # 5, p. 4]. He also maintains that contaminated water caused him throat inflammation. [doc. # 1, p. 6].

On September 2, 2022, Plaintiff was prescribed antibiotics for ten days. [doc. # 1, p. 3]. The same day, he "made sick call" and "complained to [a] nurse." [doc. # 5, p. 4].

On September 3, 2022, the "general public was notified not to drink, bathe, or brush . . . . with water." [doc. # 5, p. 3]. Plaintiff claims that for over one week, prisoners "were not advised . . . not to consume" the water and were not provided any alternative water to drink. *Id.*

"After the (10) ten days of prescribed antibiotics, [his] condition worsened." [doc. # 1, pp. 3-4]. His neck was inflamed and "permanently swollen." *Id.* at 4.

On September 21, 2022, it was difficult for Plaintiff to eat, swallow, and breathe. [doc. # 1, p. 4]. Later that day, a nurse evaluated him and sent him to an emergency room, where he received testing and steroid shots. [doc. #s 1, p. 4; 5, p. 5]. He was diagnosed with "bacteria infection tonsilitis," prescribed a liquid diet, and scheduled for an appointment with an ENT."[2] [doc. # 5, p. 5].

Plaintiff claims that when he returned to CCC, he did not receive his prescribed liquid diet. *Id.* He claims that the physician's order was ignored, and he was unable to eat for two days. *Id.* Deputy Harvey "called medical and told them to check orders from LSU medical center[,]" but "they" continued to bring Plaintiff solid foods. *Id.*

On September 23, 2022, Plaintiff "wrote again to be placed on liquid diet because [his] throat was so swollen [that he] could not swallow solid foods." *Id.* He received a liquid diet the same day. *Id.* at 5.

---

[2] Presumably by "ENT," Plaintiff refers to an ear, nose, and throat physician.

Plaintiff continuously informed "medical" that breathing was becoming more difficult. *Id.*

Plaintiff claims that CCC ignored his ENT appointment, and he suffered pain as a result. *Id.* His appointment was rescheduled for September 30, 2022. *Id.*

Plaintiff suggests that on or around September 30, 2022, Deputy Harvey "called medical to inquire about [Plaintiff's] appointments[,]" but "medical did not call him back." *Id.* Plaintiff returned to his cell and pressed the emergency button because he was experiencing severe pain and breathing complications. *Id.* "Deputy Harvey called medical a second time." *Id.* Plaintiff "was seen by medical" the same day, and he was "placed on emergency transport to LSU Medical Center[.]" *Id.* Physicians at LSU Medical Center told him that "they" made Plaintiff miss both of his appointments. *Id.* The physicians rescheduled Plaintiff for surgery to remove his tonsils. *Id.*

Plaintiff claims that, as of October 1, 2022, he had not been transported to his ENT appointment. *Id.*

Plaintiff was "seen by Dr. David Nelson on October 2, 2022. [doc. # 5, pp. 2, 5]. In an amended pleading, Plaintiff claims that Dr. Nelson failed to treat him, diagnose him, or refer him for "further consult in a timely manner." *Id.* at 1-2. Dr. Nelson allegedly "did not order any test." *Id.* at 2. Dr. Nelson did "put in a consult for ENT LSU." *Id.* at 5. While Plaintiff writes, "no meds[,]" he also states that Dr. Nelson gave him a "shot of Doxogcylin antibiotics." *Id.* at 5-6. He concludes that Dr. Nelson caused him pain, suffering, irreversible damage to his tissue, and damage to his tonsils. *Id.*

3

Plaintiff claims that the Director of Medical ignored his serious medical conditions and needs, poorly supervised and trained staff, and circumvented and interfered with his appointments. *Id.* at 2.

Plaintiff is allergic to bananas, cashew nuts, and shellfish. *Id.* at 3. "Food service" prepared him a liquid diet which included the foods above. *Id.* He claims that Nurse Smith did not notify "food service" of his allergies. *Id.* On October 6, 2022, he was transported to an emergency room "due to anaphylactic shock" from ingesting the food allergens in the liquid diet. *Id.* He was diagnosed with acute tonsillitis, adenoid and tonsillar hyperplasia, and an acute allergic reaction. *Id.* at 4. His plan of care included steroids, antibiotics, and Benadryl. *Id.*

Plaintiff concludes generally that Defendants interfered with his prescribed plan of care and circumvented his appointments because of the "expense for [his] treatment." [doc. #s 1, p. 6; 5, p. 6].

Plaintiff seeks (1) $1,500,000.00; (2) punitive damages; and (3) an injunction ordering Defendants to comply with his prescribed plan of treatment. [doc. # 1, pp. 6-7].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual

allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Medical Care

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an

inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

A. Nurse Smith

Plaintiff is allergic to bananas, cashew nuts, and shellfish. [doc. # 5, p. 3]. "Food service" prepared him a liquid diet which included the foods above. *Id.* Plaintiff claims that Nurse Smith did not notify "food service" of his allergies. *Id.* On October 6, 2022, he was

transported to an emergency room "due to anaphylactic shock" from ingesting the food allergens in the liquid diet. *Id.* He was diagnosed with acute tonsillitis, adenoid and tonsillar hyperplasia, and an acute allergic reaction. *Id.* at 4.

Plaintiff does not state a plausible constitutional claim. Nurse Smith did not refuse to treat him, ignore his complaints, or intentionally treat him incorrectly. Instead, Plaintiff's claim sounds in negligence or malpractice at best.[4] He does not allege that Nurse Smith prepared his liquid diet, served his liquid diet, instructed others to include allergens in his liquid diet, or otherwise intentionally treated him incorrectly. Rather, he intimates that the nurse *should have* relayed his food allergens to others who prepared and served his food. Acts of negligence do not constitute deliberate indifference. The Court should dismiss this claim.

B. Dr. David Nelson

Plaintiff claims that Dr. David Nelson failed to treat him, diagnose him, and refer him for "further consult in a timely manner." [doc. # 5, pp. 1-2]. Dr. Nelson allegedly "did not order any test." *Id.* at 2. Plaintiff was "seen by Dr. Nelson on October 2, 2022. *Id.* at 2, 5. Dr. Nelson "put in a consult for ENT LSU." *Id.* at 4-5. Plaintiff writes, "no meds[,]" but he also states that Dr. Nelson gave him a "shot of Doxogcylin antibiotics." *Id.* at 5-6. He concludes that Dr. Nelson caused him irreversible damage to his tissue, damage to his tonsils, pain, and suffering. *Id.*

Plaintiff does not plead a plausible constitutional violation. Rather, Plaintiff simply disagrees with the care Dr. Nelson rendered. As above, Dr. Nelson evaluated him, referred him for further consultation, and administered a shot of antibiotics. This does not reflect deliberate indifference. *See Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("[B]ecause medical

---

[4] Plaintiff may pursue any potential negligence claims in state court.

treatment was provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied."); *Adams v. Fuller*, 2022 WL 17250191, at *1 (5th Cir. Nov. 28, 2022) ("[T]he medical records are replete with notes of sick calls, examinations, and diagnoses related to his ear, which further rebut his allegations of deliberate indifference."); *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment."). The Court should dismiss these claims.

C. Director of Medical

Plaintiff claims that the Director of Medical (1) ignored his serious medical conditions and needs; (2) poorly supervised and trained staff; and (3) circumvented and interfered with his appointments. [doc. # 5, p. 2].

Plaintiff's first claim is conclusory. Plaintiff simply invites the question, how did the Director of Medical ignore his medical needs? "[C]onclusory allegations and unsubstantiated assertions of deliberate indifference by [] providers . . . [are] insufficient . . . ." *Adams*, 2022 WL at *1.

Plaintiff's second claim is also conclusory. He does not specify what training or supervision the Director of Medical's subordinates lacked. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective. . . . Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure

9

to train claim.").[5]  Essentially, Plaintiff claims that the Director of Medical is vicariously liable for his or her subordinates' inaction.  Defendant cannot be held vicariously liable.

In his third claim above, Plaintiff alleges that that the Director of Medical circumvented and interfered with his appointments.  On September 21, 2022, someone at LSU Medical Center referred him to an ENT physician.  [doc. # 5, p. 5].  He alleges that his "facility"—as opposed to the Director of Medical—ignored his appointment.  [doc. # 1, p. 5].  He later alleges that all Defendants failed to keep his appointments.  [doc. # 5, p. 6].  His appointment "was rescheduled on September 30, 2022."  *Id.*  As of October 1, 2022, he had not been transported to his appointment.  *Id.*

Plaintiff, however, fails to explain how the Director of Medical interfered with, or circumvented, his appointment.  He does not specifically fault the Director of Medical for ignoring his appointment; rather, he faults the facility.  He later faults all Defendants, but the Court "disregards bare assertions of collective responsibility, unsupported by concrete factual allegations."  *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021).  Moreover, Plaintiff does not fault the Director of Medical for rescheduling (or delaying) his appointment.

---

[5] *See also Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 376 (2020) ("Ratliff's complaint states in conclusory fashion that a 'deficiency in training actually caused Defendants Scudder and Sheffield to violate Plaintiff's constitutional rights.' But, absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)."); *Hutcheson v. Dallas Cty., Texas*, 994 F.3d 477, 483 (5th Cir. 2021) ("The complaint also asserts that '[t]he fact that this incident occurred *at all* demonstrates the obvious need for Dallas County to provide its officers with additional or different training.' That allegation is conclusory."); *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[M]ere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability.").

In addition, while Plaintiff did not receive his appointment as scheduled on September 30, 2022, he was "seen by medical" and "placed on emergency transport to LSU Medical Center" on September 30, 2022. He received further care on October 2 and 6, 2022.

Notably, Plaintiff filed this proceeding between October 5, 2022, when he signed his complaint, and October 7, 2022, when the Court received his complaint. Thus, he only waited at most 16 days to file this proceeding after September 21, 2022, when he received treatment and when someone at LSU Medical Center referred him to an ENT physician. In addition, he waited at most seven days to file this proceeding after September 30, 2022, when he (1) missed his rescheduled appointment but (2) received treatment at LSU Medical Center. Moreover, on October 2, 2022, Dr. Nelson referred him to an ENT. [doc. # 5, pp. 4-5]. Plaintiff does not specify when or if Dr. Nelson scheduled an ENT appointment. Even assuming Dr. Nelson scheduled an appointment the same day, Plaintiff waited only five days after missing the appointment before filing this proceeding.

The relatively short delays from when Plaintiff missed his appointment dates to when he filed here do not reflect a substantial risk of serious harm—considering the other treatment he received. Nor do they bespeak deliberate indifference, which is "an extremely high standard to meet." *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Non-incarcerated individuals must often wait weeks or months to see a specialist, depending on the locale, specialists' schedules, the number of available specialists, and demand. *See White v. Rader*, 2010 WL 1744652, at *4 (M.D. La. Mar. 29, 2010), *report and recommendation adopted,* 2010 WL

11

1737139 (M.D. La. Apr. 28, 2010) ("[I]t is recognized that even persons who are not confined in penal institutions must" endure delays before obtaining appointments with chosen physicians).[6]

Further, Plaintiff appears to merely quarrel with the care he *did* receive. He requested care on September 1, 2022. [doc. # 1, p. 3]. On September 2, 2022, he received care: he was prescribed antibiotics for ten days. [doc. # 1, p. 3]. He also "made sick call" the same day. [doc. # 5, p. 4]. On September 21, 2022, a nurse evaluated him and sent him to an emergency room, where he was diagnosed with "bacteria infection tonsilitis," placed on a liquid diet, and received testing and steroid shots. [doc. #s 1, p. 4; 5, p. 5]. On September 23, 2022, Plaintiff received a liquid diet. On September 30, 2022, Plaintiff "was seen by medical" and "placed on emergency transport to LSU Medical Center[.]" On October 2, 2022, Plaintiff was "seen by Dr. Nelson[,]" who evaluated him, "put in a consult for ENT LSU," and administered a shot of antibiotics. On October 6, 2022, Plaintiff was transported to an emergency room, where he was diagnosed, treated, and received steroids, antibiotics, Benadryl, and other medications. [doc. # 5-1].

The undersigned is sympathetic to Plaintiff's plight. However, Plaintiff does not state a claim of constitutional dimension. *See Petzold*, *supra*. At best, his claims sound in negligence. For instance, in a grievance he attaches to his initial pleading, he states that he missed his appointment because medical staff did not check "the proper paperwork that was in [his] folder

---

[6] Absent more, the lack of care from a specialist or from an "outside" or off-premises provider does not constitute deliberate indifference. *See Wilson v. Grimes*, 770 F. App'x 218, 219 (5th Cir. 2019) (finding that the plaintiff only disagreed with his medical treatment where he alleged that because he was not sent to a specialist, his diagnosis of, and treatment for, cancer was late and required him to undergo a laryngectomy); *Davis v. Hough*, 569 F. App'x 186 (5th Cir. 2014) (finding no deliberate indifference where the prisoner-plaintiff claimed that he was not sent to "an outside medial facility"); *Davis v. Mississippi Dep't of Corr.*, 134 F. App'x 760 (5th Cir. 2005) (opining that "complaints about . . . the lack of further opinions from specialists do not rise to the level of deliberate indifference.").

from LSU." [doc. # 1-2, p. 1]; *see Oakley v. Hudson*, 670 F. App'x 291, 292-93 (5th Cir. 2016) ("To the extent that Hudson did not receive the initial follow-up appointment and there were glitches in his receiving antibiotics, the evidence, viewed in Oakley's favor, at best points to negligent conduct. The negligent failure to schedule an appointment does not amount to deliberate indifference.").

Plaintiff is not constitutionally entitled to always see the medical professional of his choice; prisoners are not entitled to "the best [care] that money could buy . . . ." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Saldivar v. Davis*, 698 F. App'x 198, 199 (5th Cir. 2017).

The Court should dismiss these claims.[7]

**3. CCC Medical Department**

Plaintiff names CCC Medical Department as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. CCC Medical Department—as a singular entity—does not qualify as a juridical person.[8] Accordingly, the Court should dismiss Plaintiff's claims against this defendant.

If by "Medical Department" Plaintiff refers not to a singular entity but to individuals other than those he identified in his pleadings, he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a

---

[7] Again, Plaintiff may pursue any claims of negligence in state court.

[8] *See Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . ."); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991).

constitutional right.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Accordingly, to the extent Plaintiff names "Medical Department" as unidentified persons, the Court should dismiss Plaintiff's claims against them.

### 4. Identifying a Responsible Defendant

Plaintiff states that on September 1, 2022, "all Shreveport City water supply was placed on boil order." He claims, "We were never notified of [the] boil order or given any water to drink." "No notice was placed in [the dormitory] that a boil order was in effect" and that prisoners should not drink the water. *Id.* On September 3, 2022, the "general public was notified not to drink, bathe, or brush . . . . with water." Plaintiff claims that for over one week, prisoners "were not advised . . . not to consume" the water and were not provided "any water to drink." Drinking the water allegedly "contributed to exposure to bacteria that caused infections in [his] tonsils and lymph nodes." He also maintains that contaminated water caused him throat inflammation.

Next, Plaintiff states that on September 21, 2022, an emergency room physician "placed" him on a liquid diet. Plaintiff claims that when he returned to CCC, the physician's order was ignored, and he was unable to eat for two days. Deputy Harvey "called medical and told them to

14

check orders from LSU medical center[,]" but "they" continued to bring Plaintiff solid foods. On September 23, 2022, Plaintiff "wrote again to be placed on liquid diet because [his] throat was so swollen [that he] could not swallow solid foods." He received a liquid diet later that day.

As above, a complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, Plaintiff does not identify a responsible defendant for these claims. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant). At best, Plaintiff alleges that all Defendants "circumvented" his course of treatment, but to reiterate the Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm."). Accordingly, the Court should dismiss these claims.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Jamie Lee Jones's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 6th day of December, 2022.

*Kayla Dye McClusky*
Kayla Dye McClusky
United States Magistrate Judge